20678

W. C. BOMAR, Arthur Dobson, Dewey E. Josey, Mary B. Hadden, Mittie A. Fleming, B. H. Hadden and Charles E. Hadden, Respondents, v. Albert L. ECHOLS, Appellant.

(244 S. E. (2d) 308)

*Venable Vermont,* Spartanburg, *for appellant.*

*J. D. Todd, Jr.,* of *Leatherwood, Walker, Todd & Mann,* Greenville, and *Claude P. Hudson,* of *Hawkins, Ellis & Hudson,* Greer, *for respondents.*

May 8, 1978.

RHODES, Justice:

In this action, the plaintiffs-respondents seek to enjoin the defendant-appellant from developing a tract of land for use as a mobile home subdivision claiming that development for such a use violates certain restrictive covenants which, it is alleged, apply to the appellant's tract. There are no restrictions in the appellant's deed and the sole question is whether restrictions found in deeds of some of the respondents give rise to reciprocal negative easements which are enforceable against the appellant. The lower court granted the injunction sought by the respondents. We reverse.

A. H. Vaughn owned a tract of land in Spartanburg County from which he conveyed four lots. None of the deeds contained restrictions. Upon his death on September 3, 1952, Vaughn devised the remainder of this tract to his son Grover C. Vaughn.

Between 1953 and 1959, Grover Vaughn conveyed six lots from the tract to various parties. The deeds conveying

these lots restricted them to residential use with five of the deeds containing the following provisions: "The same shall be used for residential purposes only, with a dwelling house of standard construction. . . . Any violation of these restrictions, or attempted violations, shall entitle the grantor herein, or any other person owning property out of the Vaughn tract on both sides of Gap Creek Road, to injunctive relief and to damages for such violation or attempted violation."

In 1965, Grover Vaughn executed another deed. This deed, which did not contain any restrictions, merely corrected the property description in a prior deed.

Upon the death of Grover Vaughn, the remainder of the tract passed by testate succession to his wife. Mrs. Vaughn made three conveyances. Two of these were to previous grantees of A. H. Vaughn and conveyed property adjacent to that already owned by them. The other was to the appellant in this action, Albert L. Echols, and consisted of approximately forty acres. None of the deeds executed by Mrs. Vaughn contained restrictions.

After receiving his conveyance in April of 1974, the appellant developed his forty acre tract as a mobile home subdivision. Development work was completed in June and, subsequently, the respondents, present owners of lots in the Vaughn tract, brought this action.

At the time of suit, there had been fourteen conveyances by the Vaughn family out of the tract originally owned by A. H. Vaughn.[1] Only six conveyances, all originating from Grover Vaughn, were restricted as to use by provisions in the deeds. Aside from the acreage conveyed to the appellant, none of the lots in the Vaughn tract were ever numbered or conveyed with reference to a plat. No master subdivision plat was made nor did any member of the Vaughn family under-

---

[1] In addition to the four conveyances from A. H. Vaughn, the six from Grover Vaughn and the three from Mrs. Vaughn, there was a conveyance originating from A. H. Vaughn, Jr.

take to improve or develop the land for use as a subdivision. In fact, the land acquired by the appellant was idle farm land at the time it was conveyed. In addition, no blanket or general restrictions conveying the Vaughn tract were ever recorded.

The respondents contend the restrictions in the six deeds from Grover Vaughn, restrict, by implication, the remaining portions of the Vaughn tract. In other words, they assert that reciprocal negative easements have been created.

The action was heard before a Master in Equity who concluded that the restrictions in the deeds from Grover Vaughn applied only to the property conveyed by those deeds and recommended the action be dismissed. The respondents filed exceptions to the Master's Report. The lower court concluded the restrictions applied to the appellant's tract and enjoined him from violating them.

Restrictive covenants on the use of property may be created in express terms or by implication. *Edwards v. Surratt,* 228 S. C. 512, 90 S. E. (2d) 906 (1956). Where they arise by implication, the restrictions are said to create a reciprocal negative easement. 20 Am. Jur. (2d) Covenants, Conditions and Restrictions, § 173 (1965). Although a variety of terms have been used to refer to restrictive covenants by implication, "[i]t is well settled in this state that where the owner of a tract of land subdivides it and sells the distinct parcels thereto to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee. . . ." *McDonald v. Welborn,* 220 S. C. 10, 66 S. E. (2d) 327 (1951).

Ordinarily, four elements must be established to show a reciprocal negative easement:

(1) There must be a common grantor. *Edwards v. Surratt, supra;*

(2) There must be a designation of the land or tract subject to restrictions. *Id.;*

(3) There must be a general plan or scheme of restriction in existence for the designated land or tract. *Id.;* and

(4) The restrictive covenants must run with the land. 20 Am. Jur. (2d), *supra.*

If the above elements are satisfied, the restrictions are enforceable against the grantor and subsequent grantees of lots in the restricted area who take with actual or constructive notice of the restrictions. *Edwards v. Surratt, supra; McDonald v, Welborn, supra;* 20 Am. Jur. (2d), *supra.*

In determining whether reciprocal negative easements have been created, resort should be had not only to the language of the deeds, but "the circumstances surrounding the origin of covenants should also be considered." *Nance v. Waldrop,* 258 S. C. 69, 72, 187 S. E. (2d) 226, 228 (1972) ; *accord, Arrants v. Rankin,* 268 S. C. 567, 235 S. E. (2d) 135 (1977).

With the above principles in mind, we turn to consideration of the present case. We conclude that the evidence fails to establish the third element listed above, that being that there must be a general plan or scheme relating to the land or tract which is alleged to be restricted. Where it is asserted that a restrictive covenant arises by implication, the implication must be "plain and unmistakable". *Edwards v. Surratt, supra.* 90 S. E. (2d) at 910. This is in accord with the principle that "restrictive covenants are to be construed most strictly against the grantor and persons seeking to enforce them, and liberally in favor of the grantee, all doubts being resolved in favor of a free use of property and against restriction", *Id.* at 909. We conclude, as did the Master, that a general scheme or plan was not in effect and that the restrictions in the deeds from Grover Vaughn apply only to the lots conveyed by those deeds.

Since this is an action in equity and the Master and Judge are in disagreement, this Court may make findings in accordance with its own views of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). In the present case, the only evidence of a scheme or plan is that Grover Vaughn placed restrictions in six deeds executed by him. Under the facts of this case, this circumstance alone is not sufficient to satisfy the requirement that there be a general plan or scheme in effect. In our view, the evidence preponderates against a finding that the existence of a plan or scheme is "plain and unmistakable". No master plat was ever made of the Vaughn tract and no general restrictions were ever made or recorded. During the period of Grover Vaughn's ownership, a period running from 1952 to, at least, 1965,[2] only six conveyances were made. Without more, we are unable to conclude that these piecemeal, lot by lot sales from a large tract of land over a considerable time span, made without reference to a master plat, constitute a general plan or scheme. The provision permitting the restrictions to be enforced by the grantor or any purchaser of land from the Vaughn tract can not have the effect, as contended by the respondents, of transforming restrictions applicable to specific lots into blanket restriction.

Finding no evidence from which a conclusion can be drawn that the existence of a general scheme or plan applicable to the entire Vaughn tract is "plain and unmistakable", we apply the principle that all doubts must be resolved in favor of the free use of property and against restrictions. Accordingly, we hold that the restrictions do not apply to the appellant's land. The order of the lower court is reversed.

Reversed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.

---

[2] As stated above, Grover Vaughn acquired the Vaughn tract on September 3, 1952. The record does not indicate when the property passed to his wife, but it is clear that he owned the property as late as March 5, 1965, as evidenced by the corrective deed executed by him on that date.