22460

Charles S. REYNER, Appellant v. J. B. STEPHENS and Ann Stephens, Respondents.

(347 S. E. (2d) 878)

Supreme Court

*J. Richard Kelly, Jack H. Tedards, Jr.,* and *Harvey G. Sanders, Jr.* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for appellant.*

*Ray D. Lathan* of *Lathan, Smith & Barbare, P.A.,* Greenville, *for respondents.*

Feb. 4, 1986.

CHANDLER, Justice:

Charles S. Reyner (Reyner) brought this action to enjoin construction of an outbuilding on the rear portion of a subdivision lot owned by Mr. and Mrs. J. B. Stephens (the Stephenses). This is a direct appeal from the Master's Order denying injunctive relief.

We affirm.

### FACTS

Reyner and the Stephenses own lots sharing a common rear boundary in a Greenville subdivision. The original tract was subdivided by the Watsons, its original owners, beginning in the early 1960's. The deed from the Watsons to the Stephens' predecessors in title contained the folowing provision:

> No building shall be located nearer than 100 feet to the front street line, and no building shall be located *nearer*

*than 25 feet to any side or rear lot lines.* [Emphasis supplied.]

The 1971 deed to the Stephenses was "subject to all restrictions, setback lines, roadways, zoning ordinances and rights of way of record, if any, affecting the premises hereinabove described." The Stephenses built a residence on their lot in the 1970's.

In 1983, Reyner acquired his lot and constructed a residence. Although the conveyance was made subject to a set of general subdivision restrictions, incorporated by reference, there are no setback restrictions in Reyner's deed or chain of title.

Although all lots in the subdivision are subject to substantially similar subdivision restrictions, only the Stephenses' and one other are subject to a 25 feet rear setback provision.

Chronologically, the following occurred in this dispute:

On January 5, 1984, Reyner became aware that the Stephenses were planning to construct a building on the rear portion of their lot. In the following days Reyner requested information from the Stephenses concerning their plans. He then called his attorneys.

On January 13, 1984, Reyner served a Summons, Complaint and Rule to Show Cause. The complaint alleged the proposed structure would violate restrictions by "locating the building nearer to the rear lot line than twenty-five feet." Reyner later amended his complaint to allege specifically a violation of the 25 feet rear setback restriction.

The initial hearing was concluded on February 13, 1984; the Master issued an order denying relief on the ground Reyner lacked standing to enforce the setback restriction.

On March 16, 1984, Supreme Court Justice Ness issued an order declining to enjoin construction pending appeal, but directing that the Stephens "will be proceeding at [their] own risk" in continuing the construction.

The building is now completed. The Stephenses concede that it stands *five feet* from the rear property line. The exhibits show it to be a two story wood and steel structure. Because it is built on a steep slope, there is a foundation level of concrete blocks and steel support posts which faces Reyner's lot. Mr. Stephens testified he intends to use the facility as a lawn-mower/tool shed and hobby shop.

## ISSUE

The single issue we determine is whether Reyner may enforce the 25 feet rear setback restriction.

## I. 25 FEET RESTRICTION:

### ENFORCEABLE AS RECIPROCAL NEGATIVE EASEMENT?

Restrictions on the use of land may be created by express terms or by implication. *Edwards v. Surratt*, 228, S. C. 512, 90 S. E. (2d) 906 (1956). Where they arise by implication and subdivided land is involved, restrictions are termed reciprocal negative easements. *Bomar v. Echols*, 270 S. C. 676, 244 S. E. (2d) 308 (1978); 20 Am. Jur. (2d) *Covenants, Conditions and Restrictions*, § 173 (1965). Reciprocal negative easements are enforceable by any grantee against any other grantee "where the owner of a tract of land subdivides it and sells the distinct parcels thereto to separate grantees, imposing restrictions on its use *pursuant to a general plan of development or improvement* . . ." [Emphasis supplied]. *McDonald v. Welborn*, 220 S. C. 10, 18, 66 S. E. (2d) 327, 331 (1951).

Ordinarily, four elements must be established to show a reciprocal negative easement.

(1) There must be a common grantor;
(2) There must be a designation of the land or tract subject to restrictions;
(3) There must be a general plan or scheme of restriction in existence for the designated land or tract; and
(4) The restrictions must run with the land.

*Bomar*, 270 S. C. at 679, 244 S. E. (2d) at 310.

Here, subdivided land is involved with no express right of Reyner to enforce the restriction. Therefore, any such right may arise only by implication. Thus, if the restriction is to be enforced, it must meet the four point *Bomar* test.

Here, the third *Bomar* element is not present: there is no general plan or scheme relating to the land or tract, which is alleged to be restricted. Indeed, Reyner concedes that only two of the 34 lots in the subdivision have 25 feet rear setback

restrictions. These two were among the first conveyed by the Watsons, the original grantors. Five other lots of similar dimension on the Stephenses' street are not subject to 25 feet setback restrictions. The subsequent omissions of setback restrictions in later deeds evidence an intent of the Watsons not to restrict the tract, with respect to 25 feet setbacks, in accordance with a general plan.

> Neither the restricting of every lot within the area covered, nor absolute identity of restrictions upon different lots is essential to the existence of a neighborhood scheme. [Citations omitted]. *But extensive omissions or variaitons tend to show that no scheme exists*, and that the restrictions are only personal contracts. [Emphasis supplied.]

*Pitts v. Brown*, 215 S. C. 122, 130, 54 S. E. (2d) 538, 542 (1949)

The Master was correct in holding there was not a valid reciprocal negative easement Reyner could enforce.

## II. REMAINING EXCEPTIONS

Based upon oral argument and a careful consideration of the record and briefs, we conclude that the remaining exceptions present no errors of law, and that a written opinion would be without precedential value. Accordingly, the Order of the Master is affirmed in these respects pursuant to Supreme Court Rule 23.

Affirmed.

NESS, C. J., and GREGORY, HARWELL and FINNEY, JJ., concur.